**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BARBARA JEAN WILKS,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 2:25-cv-2895-ICD<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 8, 11, 22). For the reasons discussed below, it is ordered that Plaintiff's motion for summary judgment is granted, Defendant's cross-motion for summary judgment is denied, and the case is remanded for proceedings consistent with this opinion.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).

If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(g) and 416.920(a)-(g). The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(g) and 416.920(a)-(g).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted,

or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on July 7, 2022. See CAR 196.[1] In the application, Plaintiff claims disability began on June 5, 2020. CAR 105. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on September 27, 2024, before Administrative Law Judge (ALJ) Vincent Misenti. CAR 39. In an October 25, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): right knee arthroplasty, obesity, and left hip arthritis;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: to perform medium work as defined in 20 CFR 404.1567(c) except

[1] Citations are to the Certified Administrative Record (CAR) lodged on December 4, 2025, ECF No. 7.

> the claimant can lift, carry, push, and/or pull 50 pounds occasionally and 25 pounds frequently. The claimant can sit for 6 hours, and stand and/or walk for 6 hours, in an 8-hour workday. The claimant can frequently climb ramps and/or stairs. The claimant can frequently balance (as defined by the SCO/DOT), stoop, kneel, or crawl. The claimant can occasionally climb ladders, ropes, or scaffolds. The claimant can occasionally kneel or crouch. The claimant should avoid concentrated exposure to moving mechanical parts. The claimant can tolerate no exposure to unprotected heights or to extreme cold.;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 39-52.

After the Appeals Council declined review on August 14, 2025, this appeal followed.

## III. DISCUSSION

In her opening brief, Plaintiff argues that (1) The ALJ failed to properly evaluate the treating medical source opinion of James Mann, M.D.; (2) The ALJ failed to properly evaluate the examining medical source opinion of the internal medicine consultative examiner Dale Van Kirk, M.D., (3) The ALJ failed to properly evaluate the medical source opinions of the State agency medical consultants A. Dipsia, M.D., and William Backlund, M.D.; (4) The ALJ's residual functional capacity was not supported by substantial evidence; (5) The ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction. See ECF No. 8, pp. 5, 10, 14, 17, 19.

### A. Medical Opinions

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an

examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the Court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources. See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In

determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)). Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)). "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

A claimant may be eligible for Social Security Disability Insurance benefits if she was disabled for a period of time but has since improved. See Attmore v. Colvin, 827 F.3d 872, 876 (9th Cir. 2016). Medical improvement is defined as "any decrease in the medical severity" of a recipient's impairment, 20 C.F.R. § 404.1594(b)(1), and requires a "comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." Id. § 404.1594(c)(1)

1. James R. Mann, M.D.

Plaintiff argues that the ALJ did not properly evaluate the treating medical source opinion of James Mann, M.D. ECF No. 8. Specifically, the Plaintiff argues that Dr. Mann's opinion

received greater weight because it was a treating medical source opinion which is no longer proper under the Commissioner's regulations. See ECF No. 8, p. 10; 20 C.F.R. § 404.1520c(a). The Court finds that the ALJ contrasted Dr. Mann's report with other, more recent, reports and that the ALJ's weighing of Dr. Mann's report against other medical professionals properly followed the rules and regulations by explaining how the reports were weighed and why Dr. Mann's report was afforded less weight. See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)).

The ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).

Here, the ALJ noted that:

> "Dr. Mann's review and other similar reviews are not persuasive, because they are not consistent with other evidence in the record showing the claimant did not have a severe Achilles injury, as there were normal treatment records and exam findings after the injury and [her] recovery from surgery. The October 2022 consultative exam indicated unremarkable findings including full motor strength in the lower extremities, normal straight leg raise test, full ankle and foot range of motion, full right hip joint range of motion, no need to use a cane during the exam, normal Romberg test, satisfactory tandem walk, ability to get up on heels and toes, ability to squat down and take a few steps without difficulty, no acute distress, comfortable sitting in the exam chair, ability to get up from the chair without difficulty, ability to get on and off the exam bench without difficulty, ability to walk around the exam room without difficulty, and no limp."

CAR 47-48.

The ALJ properly explained that Dr. Mann's examination did not align with later examinations and that portions "of Dr. Mann's review were vague ('repetitive') without expression of limitations in vocationally relevant terms (such as specific time or weight limits or using terms such as occasionally or frequently." CAR 48. Under the deferential standard which the Court employs to review the ALJ's decision, the Court finds that the ALJ properly considered Dr. Mann's testimony—affording more weight to more recent examinations which employed better examination techniques—and not automatically crediting Dr. Mann based on his medical source opinion. However, the Court finds that the ALJ did not specifically explain why later exam results were not indicative of improvement that might still warrant a finding of previous eligibility which later expired.

2. Dale Van Kirk, M.D.

Plaintiff argues that the ALJ did not properly evaluate the examining medical source opinion of Dale Van Kirk, M.D. ECF No. 8. Plaintiff argues that the ALJ improperly rejected Dr. Van Kirk's finding that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. Id. The Plaintiff argues that the ALJ's citation to Exhibit 16F is improper as that was a gynecological examination, not specifically for Plaintiff's injury at issue. Id.

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)). The ALJ explained that Dr. Van Kirk's opinion, which opined that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally, was at odds with findings, approximately two years later, in other medical examinations that Plaintiff had "normal musculoskeletal strength and tone." CAR 24.

The Court finds that the evidence is susceptible to the rational interpretation that in the intervening period between Dr. Van Kirk's examination and the later examinations the ALJ referenced, Plaintiff's condition improved such that it was reasonable to afford the more recent examinations more weight than the previous examination. The Court finds that the ALJ did not improperly reject Dr. Van Kirk's findings, though as noted above, the ALJ did not specifically explain why earlier exam results were not indicative of a period of disability prior to subsequent improvement that might still warrant a closed period of benefits.

3. State Medical Consultants

Plaintiff argues that the ALJ did not properly evaluate the medical source opinions of the State agency medical consultants. ECF No. 8. Plaintiff essentially advances the same argument as above with regards to Dr. Van Kirk: that the subsequent exams upon which the ALJ relied in determining that the State Medical Consultants' recommendation regarding Plaintiff's lifting restrictions were improper should not have been relied on because they were a gynecological exam and a cancer screening. Id. Here again, the Court finds that the evidence is susceptible to the rational interpretation that in the intervening period between the State Medical Consultants examinations and the later examinations the ALJ referenced, Plaintiff's condition improved such that it was reasonable to afford the more recent examinations more weight than the previous examination. The Court finds that the ALJ did not improperly reject the State Medical Consultants' findings.

In sum, the ALJ credited later examinations over the 2022 examinations of Dr. Mann, Dr. Van Kirk, and the State Medical Consultants. The Plaintiff primarily relies upon the fact that the later medical appointments were not specifically for the condition of Plaintiff's injuries. See ECF No. 8, p. 16. However, the ALJ specifically explained that the examinations at issue were undermined by the "recent medical evidence and hearing testimony." CAR 34. The Court defers to the ALJ in this case where there is conflicting evidence as to Plaintiff's exact lifting restrictions. See Sprague, 812 F.2d at 1229-30. The ALJ did not specifically explain how or why Plaintiff's improvement may or may not have been weighed in regards to the potential for a finding of disability which has since improved.

**B. Residual Functional Capacity**

Plaintiff argues that the ALJ's residual functional capacity finding was not supported by substantial evidence and that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction. See ECF No. 8, p. 2. The Court finds these two arguments to be essentially the same argument as the Plaintiff's allegations of pain and physical dysfunction are central components of the determination as to the Plaintiff's residual functional capacity.

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the Court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee, 94 F.3d at 522. An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ evaluated Plaintiff's subjective statements and testimony at Step 4, providing the following summary:

> In written statements, the claimant alleged disability due to right knee replacement, and left side bursitis, among other conditions. The claimant reported she stopped working in June 2020 (Ex. 2E/2). She reported taking medication for pain (Ex. 2E/4), with no side effects (Ex. 5E/4; 7E/8). She also reported leg pain every day, pain when standing or walking, and some pain when sitting (Ex. 2E/9). On appeal, she reported worsening conditions since October 2022 (Ex. 5E/2), with left hip weakness due to bursitis (Ex. 5E/4), and cramping (Ex. 5E/5). She later reported worsening conditions since March 2023 (Ex. 7E/4), including instability, stiffness, and pain that radiated up and down her leg (Ex. 7E/10).
>
> The claimant testified she weighed 240 pounds. She drove three times a week. She had not worked since June 2020. Her biggest medical problem is her right knee. She has trouble sitting, standing, and walking. She received injections and underwent physical therapy. She used a prescription cane she got at a pharmacy, and then admitted it was not prescribed. She later admitted that she did not talk to her doctor about using a cane, and her doctor had never seen her using the cane. She used a walker in 2019 but no longer uses it. She underwent knee arthroplasty, and still had swelling and pain. She has not had any kind of treatment since the surgery. She fell and injured her knee again in April 2023, and received only pain medication treatment. She can sit for 90 minutes before rotating to a standing position or lying down for 20 minutes. She lays down for approximately 4 hours during the day. She can stand for up to 30 minutes before rotating positions. She could walk for up to 25 minutes and lift probably 10 pounds though she had not tried to lift that much. She spent time during the day making breakfast, picking up, cleaning a little bit, and taking breaks. She can fold clothes, make lunch and dinner, put the dishes in the dishwasher, vacuum, mop, and sweep. She denied helping her disabled husband. She visits her daughter's house and dines in restaurants and shopped with the aid of a cart like a walker. She made bracelets for her family. She occasionally babysat for her grandchildren and picked them up from school. She also complained of weakness in her legs.
>
> CAR 19.

The ALJ concluded that Plaintiff's subjective statements and testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." CAR 21. The ALJ provided the following analysis:

> …the claimant's medical history is not necessarily consistent with the allegations of disability, as the record does not reflect the level of medical treatment one would expect for a disabled individual. For instance, the claimant rarely sought or received treatment, and the treatment received was relatively conservative. Despite reports of use of a non-prescription cane, the undersigned notes that the overall record did not provide evidence that any assistive device was required for ambulation, given unremarkable gait and lower extremity strength findings, and exams showing no use of assistive devices after recovery from surgery, as discussed above (see Ex. 3F/8; 8F/178; 9F/3, 8; 14F/1; 16F/7). In addition, the claimant takes medication for the alleged impairments, which weighs in the claimant's favor, but the limited medical record reveals that when compliant, the medications have been relatively effective in controlling the claimant's symptoms.
>
> The claimant admitted she did not receive any medical care for her back and knee, had not undergone any back surgery, and did not know the etiology for her right knee condition that was rectified by surgery several years prior to the hearing. Imaging studies showed the claimant's right knee arthroplasty surgery was a success (see Ex. 3F). The claimant stated that she could cook, clean, do laundry, wash dishes, go shopping, dine in restaurants, make bracelets, babysit for her grandchildren, and drive.
>
> CAR 21.

Here the ALJ properly and completely considered Plaintiff's testimony and subjective statements. The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the Court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee, 94 F.3d at 522. Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction. ECF No. 8, p. 5. The ALJ found that the Plaintiff "rarely sought or received treatment, and the treatment was relatively conservative." CAR 39. The ALJ also

noted that "the limited medical record reveals that when compliant, the medications have been relatively effective in controlling the claimant's symptoms." Id. The ALJ also gave weight to the claimant's testimony that she "could cook, clean, do laundry, wash dishes, go shopping, dine in restaurants, make bracelets, babysit for her grandchildren, and drive." Id.

While the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . . [necessarily] detract from her credibility as to her overall disability," see Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)), the ALJ did not rely solely on the Plaintiff's subjective statements, instead pointing to objective medical opinions which did not align with a disability categorization. See CAR 39. The Court finds that the ALJ properly considered the Plaintiff's statements and testimony and gave them weight consistent with the law's directives. The ALJ considered an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, the Plaintiff's daily activities, and physician and third-party testimony about the nature, severity, and effect of symptoms, all of which are proper under the law. See CAR 39; Smolen, 80 F.3d at 1284.

However, because the ALJ failed to assess whether the early medical opinions established a valid period of disability prior to subsequent improvement, the final non-disability determination cannot stand as to the entire structural timeline of the claim.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is not based on complete legal analysis regarding a potential closed period of disability. Accordingly,

IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 8) is GRANTED;

2. Defendant's cross-motion for summary judgment (ECF No. 11) is DENIED; and

3. The case is REMANDED to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion, specifically to determine whether Plaintiff was eligible for a closed period of disability benefits prior to the medical improvement of her condition.

4. The Clerk of Court is directed to enter judgment in favor of Plaintiff and close this case.

Dated: October 16, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE